UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

N° 08-CV-2277 (JFB) (AKT)
_____

TONI PETRUNTI,

Plaintiff,

VERSUS

CABLEVISION,

Defendant.

_____

**MEMORANDUM AND ORDER**
December 30, 2009
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Toni Petrunti ("plaintiff") brings this suit against her former employer, Cablevision ("Cablevision" or "Company" or "defendant") pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq*. Plaintiff, who was a Customer Service Representative at Cablevision, alleges that Cablevision terminated her because she had a medical condition – namely, left ear damage and pain – which caused her to require time off from work. Cablevision has moved for summary judgment, arguing that plaintiff is not an "individual with a disability" as defined by the ADA and that it terminated plaintiff because she violated Company policy.

For the reasons set forth below, the Court grants defendant's motion in its entirety.

First, the uncontroverted evidence demonstrates that plaintiff was not limited in any major life activity, including working, and, thus, cannot establish a prima facie case that she had a "disability" as defined by the ADA. In fact, despite the alleged left ear damage, plaintiff testified that she could eat, sleep, walk, shop, care for her home, work five days per week as a supervisor for another company (without Cablevision's knowledge) while she was on medical leave from Cablevision, and attend nursing school upon her termination. Thus, the undisputed evidence demonstrates that plaintiff's ear pain did not substantially limit her ability to work in a broad range or class of jobs, nor did it substantially limit any other major life activity. Second, even if plaintiff could satisfy her prima facie case, defendants have articulated a legitimate, non-discriminatory

reason for her termination — namely, repeated violations of Cablevision policy by improperly transferring multiple customer calls to a customer service survey. Plaintiff has admitted to at least some of the call mishandling and does not recall other such incidents. Moreover, she offers absolutely no evidence from which a rational trier of fact could conclude that the proffered reason for the termination was a pretext for disability discrimination. Therefore, her ADA claim cannot survive summary judgment.

I. BACKGROUND

The Court has taken the facts described below from the parties' affidavits, exhibits and defendant's Local Rule 56.1 Statement of Facts ("Def.'s 56.1").[1] In ruling on a motion for summary judgment, the Court construes the facts in a light most favorable to the non-moving party — in this case, the plaintiff. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

A. Plaintiff's Role and Responsibilities at Cablevision

Plaintiff began work at Cablevision as a part-time Customer Service Representative (CSR) in October 1997. (Def's. 56.1 ¶ 1.) She worked part-time until 2004 when, at her request, she became a full-time CSR. (*Id.* ¶ 5.) As a CSR, plaintiff answered calls from customers in one of Cablevision's customer service centers. (*Id.* ¶ 2.) Like other CSRs, plaintiff wore a telephone headset while performing her duties. (*Id.* ¶ 4.)

B. Plaintiff's 2006 Medical Leave

In the spring of 2006, plaintiff requested an extended leave of absence from Cablevision pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. (*Id.* ¶¶ 24-26.) In order for Cablevision to process her leave request, plaintiff was required to submit a "Certification of Health

---

[1] The Court notes that plaintiff failed to file and serve a response to defendant's Local Rule 56.1 Statement of Facts in violation of Local Civil Rule 56.1. "Generally, a 'plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed.'" *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04 Civ. 2935(ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Accordingly, in the exercise of its broad discretion and given plaintiff's *pro se* status, the Court will overlook this defect and will deem admitted only those facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Fed. Trade Comm. v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 303 (S.D.N.Y. 2008) (overlooking party's failure to comply with Local Rule 56.1 and considering "'the totality of the parties' submissions in identifying disputed material facts'" (quoting *Hamilton v. Bally of Switz.*, No. 03 Civ. 5685, 2005 WL 1162450, at *9 (S.D.N.Y. May 12, 2005))). Thus, where defendant's Rule 56.1 statement is cited, the statement is supported by the record, and there is no evidence in the record to contradict that fact.

Care Provider." (*Id.* ¶ 25.) On April 3, 2006, plaintiff submitted a certification signed by Dr. Robert Field, M.D., which stated that plaintiff had been experiencing ear pain for three weeks and that the duration of plaintiff's condition was "unknown." (*Id.* ¶ 28.) The same day, Cablevision granted plaintiff's leave request. (*Id.* ¶ 29.)

One and one-half months later, as plaintiff's FMLA leave was nearing an end, plaintiff told Cablevision that she was still unable to work because of her medical condition and requested additional, non-FMLA leave. (*Id.* ¶¶ 31-32.) Before approving the additional leave, Cablevision advised plaintiff to submit a statement from a doctor describing her medical condition. (*Id.* ¶ 33.) On June 5, 2006, Dr. Jacques Winter submitted a statement to Cablevision certifying that plaintiff had left ear pain and that she would be out of the office for "4 weeks pending next office visit on 7/7/06." *Id.* ¶ 36.) Four days later, Cablevision approved plaintiff's request for additional leave. (*Id.* ¶ 38.) Cablevision continued to pay plaintiff while she was out. (*Id.* ¶ 40.) During this time, without Cablevision's knowledge or consent, plaintiff was working approximately five days a week as a supervisor at the United Parcel Service (UPS). (*Id.* ¶¶ 43, 45.)

C. Plaintiff's Return to Work and Request for Intermittent Time Off

Plaintiff returned to work at Cablevision on August 7, 2006. (*Id.* ¶¶ 39, 50.) Upon returning, she requested intermittent time off due to her ear pain. (*Id.* ¶ 51.) Before granting her request, Cablevision asked her to submit a medical certification from her health care provider. (*Id.* ¶ 52.) On August 16, 2006, Dr. Winter submitted a letter to Cablevision stating that plaintiff may need up to eight days per month leave from work depending on her ear pain symptoms. (*Id.* ¶¶ 55, 57.) Cablevision allowed plaintiff to take "time off intermittently for up to 8 days per month, due to [her] medical condition." (*Id.* ¶ 56.) Between August 2006 and January 2007, Dr. Winter repeatedly certified that plaintiff may need up to eight days a month off from work because of her ear pain. (*Id.* ¶ 58.) From September 2006 to January 2007, plaintiff took at least eight days off each month. (*See id.* ¶¶ 60-64.) On many of these days off from Cablevision, plaintiff worked at UPS. (*Id.* ¶ 66.).

D. The Customer Satisfaction Survey and the First Phone Incident

Beginning in 2006, Cablevision implemented a "Customer Satisfaction Survey" program. (*Id.* ¶ 67.) In implementing this program, Cablevision directed its CSRs, such as plaintiff, to ask callers if they would be willing to take a short survey at the end of a call. (*Id.* ¶ 72.) If the customer did not refuse or hang up, the CSR would transfer the call to a special survey line. (*Id.*) Cablevision also instructed CSRs that they were prohibited from "[m]anipulating the telephone system" and from "[i]nappropriately transferring a customer call." (*Id.* ¶ 69.)

On March 28, 2007, plaintiff was working in the Cablevision customer service center. (*Id.* ¶ 75.) Her supervisor, Debra Rayola, was randomly monitoring the CSRs' calls. (*Id.*) Rayola heard plaintiff twice call an answering machine and attempt to transfer the answering machine to the survey line. (*Id.* ¶¶ 75-76.) Rayola confronted plaintiff about her actions and asked her why she would transfer an

3

answering machine to the survey line. (*Id.* ¶ 77.) The next day, Rayola and Martha Armstrong, a Cablevision manager, met with plaintiff and told her that transferring an answering machine to the survey line was considered "gross phone manipulation" and violated Cablevision policy. (*Id.* ¶ 80.)

E. Plaintiff's 2007 Medical Leave, Her Return to Work, and Her Termination

A few weeks after this incident, plaintiff requested another leave because of her ear pain. (*Id.* ¶ 83.) Cablevision granted plaintiff three months medical leave and continued to pay plaintiff while she was out. (*Id.* ¶¶ 86-87.)

Plaintiff returned to work on July 15, 2007 and underwent a two-day re-orientation program. (*Id.* ¶¶ 88, 90.) After completing the program, plaintiff resumed her regular duties on July 17, 2007. (*Id.* ¶ 91.) That same day, according to defendant, Ms. Rayola, the supervisor, monitored a call in which a customer told plaintiff she did not want to take the survey and hung up. (*Id.* ¶ 93.) Plaintiff, however, then transferred the now-empty line to the survey line. (*Id.*) The next day, according to defendants, Rayola again monitored plaintiff transfer an empty line to the survey line. (*Id.* 95.) Plaintiff claims she does not recall either of these incidents. (*Id.* ¶¶ 94, 96.)

Following the second incident, Rayola and Ms. Armstrong, the manager who had previously met with plaintiff in March, again met with plaintiff. (*See id.* ¶ 97.) They reiterated Cablevision's policies. (*Id.* ¶¶ 98-99.) Plaintiff told Rayola and Armstrong that "I'm not getting it, I never got it, and I don't know why I don't do it . . . I don't understand either, I don't have an answer for you." (*Id.* ¶ 100.) After a Cablevision Human Resources representative joined the meeting, plaintiff was told that she was being dismissed from the Company. (*Id.* ¶ 102.)

G. Employment Following Termination

Since her termination from Cablevision, plaintiff has worked in a number of jobs, including as a sales person for a medical supply company and, briefly, as a customer service representative at a vitamin company. (*Id.* ¶¶ 105-06.) She is currently employed as a nurse's aide. (*Id.* ¶¶ 107-08.) Plaintiff is also pursuing a nursing degree. (*Id.* ¶ 111.)

H. Procedural History

On March 10, 2008, plaintiff filed a charge with the Equal Employment Opportunity Commission regarding Cablevision's alleged discriminatory conduct. Plaintiff received a right to sue letter from the EEOC on April 9, 2008 and filed a complaint in this Court on June 6, 2008. The complaint alleges that Cablevision violated the ADA by discharging plaintiff because plaintiff required time off for her ear pain. By application filed on December 5, 2008, plaintiff requested the appointment of counsel. By Order dated December 9, 2008, this Court denied plaintiff's request. Plaintiff renewed that request by application filed on May 29, 2009. On June 19, 2009, the Court again denied that application. In particular, the Court concluded the following: "[B]ased upon the submissions to the Court from plaintiff, it is clear that she is capable of understanding, and responding to, the factual and legal issues raised. Plaintiff's *pro se* status is not hindering her ability to present her position to this Court and she is advised to avail herself of the *Pro Se*

4

Office for any procedural questions. The appointment of counsel is unnecessary under the circumstances of this case." (June 19, 2009 Order, at 1.)

On July 30, 2009, defendant filed the instant motion for summary judgment and provided the *pro se* plaintiff with the notice required by Local Civil Rule 56.2. (*See* Docket # 66-54.) Plaintiff submitted a two-page letter in response to the motion, which was filed on September 1, 2009. On September 17, 2009, defendant filed a reply. The Court has considered all of the submissions of the parties.[2]

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (stating that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (emphasis in original). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary

---

[2] To the extent that plaintiff in her letter response again seeks appointment of counsel, that request is denied for the same reasons set forth in the Court's prior order. In this case, plaintiff's *pro se* status does not hinder her ability to present any evidence of disability discrimination that she had in her own possession or could have obtained in the discovery process. Moreover, the Court has independently examined the record for any genuine issues of material fact and construed her opposition to raise the strongest arguments possible. Also, to the extent that plaintiff made a vague application to the Magistrate Judge by letter filed November 28, 2008 to amend the complaint to add unidentified defendants, that application is denied as futile. As set forth *infra*, plaintiff's claim cannot survive summary judgment because of the absence of evidence of disability discrimination. Thus, amendments to the complaint to add defendants cannot cure that defect.

5

judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

Finally, where the plaintiff is proceeding *pro se*, the Court must "construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (alterations in original) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)). Though a *pro se* litigant's pleadings and other submissions are afforded wide latitude, a *pro se* party's conclusory assertions, completely unsupported by evidence, are not sufficient to defeat a motion for summary judgment. *Shah v. Kuwait Airways Corp.*, - - - F. Supp. 2d - - -, No. 08 Civ. 7371 (GEL), 2009 WL 2877604, at *2 (S.D.N.Y. Sept. 9, 2009) ("Even a *pro se* party, however, 'may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful.'" (quoting *Auguste v. N.Y. Presbyterian Med. Ctr.*, 593 F. Supp. 2d 659, 663 (S.D.N.Y. 2009))).

### III. DISCUSSION

Plaintiff alleges that defendant violated the Americans with Disabilities Act by terminating her on the basis of her ear pain. The ADA provides that "[n]o covered entity shall discriminate against a qualified

6

individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (amended Jan. 1, 2009).[3]  Claims of employment discrimination under the ADA are evaluated under the three-part burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Therefore, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the [adverse employment action]; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (citing *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program*, 198 F.3d 68, 72 (2d Cir.1999)).

As set forth below, plaintiff's ADA claim cannot survive summary judgment because, even examining the evidence in the light most favorable to plaintiff, no rational jury could conclude that she was disabled within the meaning of the ADA. Moreover, even assuming that she were disabled, no rational jury could find, given the undisputed evidence regarding problems with her job performance, that the defendant's termination was motivated by her alleged disability.

A. The "Disability" Requirement

To establish a prima facie case for

---

[3] Congress recently enacted the ADA Amendments Act of 2008 ("ADAAA"), effective January 1, 2009, which expanded the class of individuals entitled to protection under the ADA. Among other things, the ADAAA changed the above standard by striking the phrase "with a disability because of the disability of such individual" and replacing it with the phrase "on the basis of disability." However, this Court and other courts have stated that the ADAAA does not apply to conduct that occurred prior to the effective date of the statute. *See, e.g.*, *Schroeder v. Suffolk County Cmty. College*, No. 07-CV-2060 (JFB) (WDW), 2009 WL 1748869, at *6 (E.D.N.Y. June 22, 2009) (collecting cases); *see also Cody v. County of Nassau*, No. 08-5127-cv, 2009 WL 2958742, at *3 (2d Cir. Sept. 16, 2009) (summary order) ("[I]t is unlikely that the ADA Amendments Act of 2008 . . . applies to conduct that occurred before the Act's effective date of January 1, 2009. We need not decide the retroactivity issue . . . ."); *White v. Sears, Roebuck & Co.*, No. 07 Civ. 4286 (NGG) (MDG), 2009 WL 1140434, at *5 (E.D.N.Y. Apr. 27, 2009) ("The court therefore . . . concludes that the [ADAAA] should not apply to this case. This is consistent with the conclusions of other courts in this circuit that the 2008 Amendments do not apply to conduct prior to the effective date of the amended statute.") (collecting cases); *Moran v. Premier Educ. Group, LP*, 599 F. Supp. 2d 263, 271-72 (D. Conn. 2009) ("[I]t appears that every court that has addressed this issue, which includes a number of federal district courts and at least one federal appeals court, has concluded that the 2008 Amendments cannot be applied retroactively to conduct that preceded its effective date.") (collecting cases). Thus, the Court will evaluate plaintiff's evidence within the legal framework in place at the time of plaintiff's termination, July 19, 2007, and not under the ADAAA. In any event, her claim would not survive summary judgment under the new standards for the same reasons provided *infra*.

discriminatory discharge under the ADA, a plaintiff has the burden to demonstrate that: "1) [she] was an 'individual who has a disability' within the meaning of the statute; 2) the employer had notice of [her] disability; 3) [she] could perform the essential functions of the job with reasonable accommodation; and 4) the employer refused to make such accommodation." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000). If a plaintiff establishes a prima facie case, the burden shifts to the employer "to demonstrate that the . . . proposed accommodation would have resulted in undue hardship." *Id.*

In this case, with respect to the first element, defendant argues that, based upon the undisputed evidence, plaintiff cannot establish that she is an "individual with a disability" under the ADA. As set forth below, the Court agrees.

1. Applicable Standard

The ADA defines "disability" as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2) (amended Jan. 1, 2009).[4]

"In determining whether an individual has a disability for purposes of the ADA," the Second Circuit has "applied the three-step approach taken by the Supreme Court in *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)." *Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002). Under this approach,

> "plaintiff must first show that she suffers from a physical or mental impairment. Second, plaintiff must identify the activity claimed to be impaired and establish that it constitutes a "major life activity." Third, the plaintiff must show that her impairment "substantially limits" the major life activity previously identified. In addition, the Supreme Court has recently clarified that the identified major life activity must be "of central importance to daily life." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184 (2002).

*Weixel*, 287 F.3d at 147 (internal citations omitted).

The term "major life activity" includes "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). This, however, is not an exclusive list, and the Second Circuit has also included "'sitting, standing, lifting, and reaching'" as major life activities. *Ryan v. Grae & Rybicki*, 135 F.3d 867, 870 (2d Cir. 1998) (quoting U.S. Equal Employment Opportunity Commission, *Americans with Disabilities Act Handbook*, I-

---

[4] Under the ADAAA, "disability" is now defined at 42 U.S.C. § 12102(1).

27 (1992)).[5]

Determining whether or not someone is disabled within the meaning of the statute requires "an individualized, fact-specific analysis." *Worthington v. City of New Haven*, No. 3:94 Civ. 00609 (EBB), 1999 WL 958627, at *8 (D. Conn. Oct. 5, 1999) (citations omitted). To prove disability under this test, an individual must do more than "merely submit evidence of a medical diagnosis of an impairment." *Williams*, 534 U.S. at 185. "Instead, the ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by the impairment] in terms of their own experience . . . is substantial.'" *Toyota*, 534 U.S. at 198 (quoting *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999)) (alteration in original).

2. Application

Plaintiff does not explicitly allege she is limited in any major life activity, nor is there evidence to raise a genuine issue of material fact as to the existence of any such limitation. As discussed below, to the extent plaintiff's complaint can be read as asserting she is limited in the major life activity of "working," the undisputed record does not support that claim, and no rational jury could conclude otherwise. Therefore, summary judgment is warranted as a matter of law on the ADA claim.

---

[5] The ADAAA codifies all of these activities, except sitting and reaching, as "major life activities." Additionally, the ADAAA includes concentrating, reading, bending, eating, sleeping, thinking, communicating, and "major bodily functions" as major life activities. *See* 42 U.S.C. § 12102(2) (as amended Jan. 1, 2009).

As noted above, a person is limited in the major life activity of working when she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *See* 29 C.F.R. § 1630.2(j)(3)(i); *see also Heilweil v. Mt. Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir. 1994) ("[A] person found unsuitable for a particular position has not thereby demonstrated an impairment substantially limiting such person's major life activity of working." (citing *Daley v. Koch*, 892 F.2d 212, 215 (2d Cir. 1989))). Thus, a person is not substantially limited in the major life activity of work where her impairment excludes her only from a particular job or from a narrow class of jobs. *See, e.g*, *Muller v. Costello*, 187 F.3d 298, 313 (2d Cir. 1999) (finding that plaintiff was not substantially limited in major life activity of working where he "presented no evidence that he was precluded from jobs other than correctional officer in his geographic area"); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 644 (2d Cir. 1998) (plaintiff not substantially limited in major life activity of working because "impairment disqualif[ied] him 'from only a narrow range of jobs' (those involving physical confrontation)") (alteration in original); *Heilweil*, 32 F.3d at 724 ("Here plaintiff was medically restricted from working in only one place in the hospital – the blood bank . . . . Heilweil was not therefore a handicapped person under the [Rehabilitation] Act when she was discharged. Because her asthmatic condition did not substantially limit a major life activity — either her ability to breathe or work — defendant's motion for summary judgment was properly granted."); *Ongsiako v. City of*

9

*N.Y.*, 199 F. Supp. 2d 180, 185-86 (S.D.N.Y. 2002) (finding "plaintiff present[ed] no evidence from which a rational juror could infer that his impairment precluded him from performing a 'broad class of jobs'" where back injury precluded him from working only in jobs requiring heavy lifting); *Parisi v. Coca-Cola Bottling Co.*, 995 F. Supp. 298, 302 (E.D.N.Y. 1998) (finding plaintiff "failed to state a 'disability' as a matter of law" because alleged knee injury precluded only "his employment as a route deliveryman with Coca-Cola, and no more").

Here, plaintiff claims only that her disability disqualifies her from jobs requiring the use of ear phones. Plaintiff acknowledged in her deposition that she would be physically able to work in a job dealing with "walk-in[s]" at Cablevision. (Pl. Dep. 46:20-25.) She also acknowledged that, while on disability leave from Cablevision, she was able work 36 hours a week at UPS. (*See id.* 126:18-19 ("I practically worked almost 36 hours a week").) Her duties there included ensuring the accuracy of payroll records and ensuring that the UPS trucks contained the right packages before they were sent out on deliveries. (*Id.* 123:16-125:15.) She further acknowledged that she has been working part-time as a home health aide and that this job requires assisting a bed-ridden patient with her daily activities, including feeding her, lifting her, cooking and cleaning, washing and bathing her, and accompanying her on walks and errands. (*Id.* 38:25-40:17; 44:4-46:12.) Plaintiff also testified that, if she wanted to, she could work full-time in the health aide job. (*Id.* 280:12-281:1.) Additionally, plaintiff is currently enrolled in evening classes at Suffolk County Community College, working towards a degree in nursing. (*Id.* 39:5-6; 42:9-43:2; 269:15-270:7.) In short, plaintiff can show, at best, that her impairment prevents her from working only in a "narrow class of jobs," those requiring the use of ear phones. As such, she is not substantially limited in the major life activity of working. *See, e.g., Mellenthin v. SBC-Ameritech*, No. 05 C 3688, 2008 WL 4442590, at * 8 (N.D. Ill. Sept. 29, 2008) ("Here, [plaintiff] has failed to put forward any evidence that she is unable to perform a class of jobs or a broad range of jobs. . . . Instead, [plaintiff] is merely limited in her ability to perform the single job of customer service specialist. This limitation, even if she had it, does not constitute a substantial limitation in the major life activity of working."); *see also McGhee v. ADESA Aucitons Memphis*, No. 08-2457-STA-dka, 2009 WL 649828, at *6 (W.D. Tenn. Mar. 12, 2009) (dismissing ADA claim, where plaintiff claimed use of airgun to detail cars caused him headaches and pains due to hearing loss in right ear, because plaintiff did not allege he was unable to perform the assigned job or other jobs due to the impairment); *Fitzgerald v. Boone County Pub. Safety Comms. Center*, Civil Action No. 04-149-DLB, 2006 WL 2714870, at *8 (E.D. Ky. Sept. 22, 2006) ("The Supreme Court in *Williams* explains that a major life activity, in this case hearing, is not substantially limited simply because an employee's impairment prevents him from performing a particular job.").

Additionally, plaintiff cannot show that her impairment substantially limits her in any other major life activity. Dr. Winter did say that plaintiff's impairment made it inadvisable for her to sit for extended periods, lift heavy objects, or bend. (*See, e.g.*, Dep. of Dr. Jacques Winter, 77:17-78:14.) As noted above, the Second Circuit has classified sitting

and lifting as major life activities.[6] Hearing also "is clearly a major life activity within the meaning of the ADA." *Fall v. N.Y. State United Teachers*, 289 F. App'x 419, 421 (2d Cir. 2008); *see also* 29 C.F.R. § 1630.2(i). However, in order to qualify as a disability under the ADA, a plaintiff must demonstrate that an alleged hearing impairment was severe enough to substantially limit a major life activity.

In the instant case, plaintiff has put forward no evidence that, because of her alleged hearing impairment or pain, she is substantially limited in performing any major life activities — whether it be hearing, sitting, lifting, or anything else. To the contrary, plaintiff has repeatedly characterized her impairment as precluding her only from wearing ear phones. (*See*, *e.g.*, Pl. Dep. 46:22-47:4 ("I can't do the ear phones anymore. I could work — I always wanted to work at the walk-in. I don't have to wear the ear phones. That's what killed me. That's why I'm nursing now. I can't put the ear phones [sic]. I actually cannot take another customer service job."); *id.* 158:2-14 ("I was working at U.P.S. I couldn't work at Cablevision anymore. My ear was killing me and to sit with the ear phones for eight hours a day was irritating my ear severely. At U.P.S., I didn't have that problem and wasn't giving up that job, you know. This job was just deteriorating my ear little by little[,] and I just couldn't do it anymore, so I did work at U.P.S. I'm not gonna [sic] say I didn't. They ruined my ear. I can't put headphones on my ears anymore."); *see also* Pl. Opp., at 1 ("Toni Petrunti was out on [disability] because of the damage done to my left ear which prevented me to wear [sic] headphones on my ears.").)

Thus, after reviewing the undisputed facts, the Court concludes that no reasonable jury could find that plaintiff is an "individual with a disability" as defined by the ADA. *See Santiago Clemente v. Executive Airlines, Inc.*, 213 F.3d 25, 33 (1st Cir. 2000) (affirming summary judgment for employer on ADA claim where flight attendant's ear impairment did not substantially interfere with major life activities of hearing, speaking, or working); *Tabb v. Quinn*, No. C06-5111 RBL/KLS, 2007 WL 1430104, at *6 (W.D. Wash. May 11, 2007) ("Based on the undisputed evidence presented, the undersigned concludes that Plaintiff cannot meet his burden of showing that he is disabled under the ADA by showing the moderate hearing loss in one ear. Viewing all the evidence in Plaintiff's favor, it is clear that Plaintiff's hearing impairment did not substantially limit any major life activity and therefore, Plaintiff's ADA claim should be dismissed as a matter of law."); *Benette v. Cinemark U.S.A., Inc.*, 295 F. Supp. 2d 243, 256 (W.D.N.Y. 2003) (summary judgment warranted on ADA claim where plaintiff failed to provide evidence that impairment substantially limited hearing); *Dlugos v. Eastman Kodak Co.*, No. 95-1525, 1996 WL 679411, at *5 (W.D. Pa. Sept. 5, 1996) ("After careful consideration of the evidence presented by the Plaintiff, I find that the evidence which the Plaintiff has come forward with in support of his contention that his impairments substantially limit his major life activities of hearing, working, balancing and concentrating simply is insufficient to establish that he is an individual with a disability.").

In sum, given the undisputed evidence regarding the alleged impairment, plaintiff cannot demonstrate that she is disabled under

---

[6] *See Ryan*, 135 F.3d at 870.

11

the ADA.[7] Accordingly, summary judgment is warranted on that claim.

B. Lack of Evidence of Discrimination

Even assuming *arguendo* that plaintiff could establish a prima facie case, her claim could still not survive summary judgment because defendant has articulated a non-discriminatory reason for the termination, and plaintiff has put forth no evidence to support an inference of discrimination based on disability. As discussed below, given the undisputed evidence regarding the problems with plaintiff's performance and the accommodations made for plaintiff when she raised her hearing pain, no rational jury could conclude that the reason given by the defendant was a pretext for discrimination.

1. Applicable Standard

Under the *McDonnell-Douglas* burden-shifting formula, if the plaintiff establishes a prima facie case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason'" for the adverse employment action. *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996)). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

To meet this burden, the plaintiff may rely on evidence presented to establish her prima facie case, as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that she satisfies "*McDonnell Douglas's* minimal requirements of a prima facie case" and to put forward "evidence from which a fact finder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000). Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*

---

[7] Even assuming plaintiff attempted to raise a "regarded as disabled" claim, such a claim also could not survive summary judgment because there is no evidence from which a rational jury could find that the defendant perceived plaintiff as being substantially limited in a major life activity. *See, e.g.*, *Fall*, 289 F. App'x at 421 n.4 ("[Plaintiff's] contention that the [defendant] 'regarded' her as disabled similarly fails. [Plaintiff] offers no evidence that the [defendant] perceived her impairment to substantially limit the exercise of a major life activity."); *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1007-09 (9th Cir. 2007) (affirming summary judgment on "regarded as disabled" claim where employee failed to provide sufficient evidence that her hearing impairment substantially limited the major life activities of hearing or working); *Fitzgerald*, 2006 WL 2714870, at *8-9 (granting summary judgment on "regarded as disabled" claim under ADA where evidence that employer mistakenly believed that plaintiff could not be a dispatcher due to hearing impairment did not show that employer believed plaintiff was "'substantially limited' in her ability to hear" or that she was unable to work in a broad range or broad class of jobs).

12

2. Application

In this case, defendant contends that it terminated plaintiff because she failed to comply with Cablevision policies. Specifically, defendant asserts that Company policy, which had been communicated to plaintiff, prohibited customer service representatives from manipulating the phone lines and from inappropriately transferring calls to Cablevision's Customer Service Survey. On March 28, 2007, plaintiff's supervisor observed plaintiff violate these policies when she twice transferred customers' answering machines to the survey line. (Def's. 56.1 ¶¶ 75-82.) The supervisor and a Cablevision manager later met with plaintiff and instructed her that her conduct was prohibited. Less than four months later, in July 2007, plaintiff was again observed inappropriately transferring calls to the survey, and these incidents resulted in her termination. (*Id.* ¶¶ 91-104.). Violation of Company policy is a legitimate, non-discriminatory reason for terminating an employee. *See, e.g.*, *Pacenza v. IBM Corp.*, No. 04 Civ. 5831 (PGG), 2009 WL 890060, at *12 (S.D.N.Y. Apr. 2, 2009) (finding, on summary judgment motion in ADA case, that discharge of plaintiff for violating company "internet usage and harassment policies" was a legitimate, non-discriminatory reason for termination); *Brown*, 488 F. Supp. 2d at 406 ("'Certainly, an employer is entitled to discharge an employee who fails to follow company rules . . . .'" (quoting *Jackson v. Nor Loch Heath Care Facility*, 297 F. Supp. 2d 633, 636 (W.D.N.Y. 2004), *aff'd* 134 F. App'x 477 (2d Cir. 2005))); *Costello v. St. Francis Hosp.*, 258 F. Supp. 2d 144, 155-57 (E.D.N.Y. 2003) (stating that violations of, *inter alia*, hospital's sexual harassment policy and no solicitation policy were legitimate reasons for termination).

In her deposition, plaintiff acknowledged transferring a customer's answering machine to the survey line during March 2007.[8] She further testified that she does not recall whether she did this in July though. Plaintiff's lack of recollection is insufficient, however, to create a triable issue of fact. *See Costello*, 258 at 148 (finding that no issue of fact created in ADA case simply because plaintiff repeatedly answered deposition questions by stating "'I don't recall' or 'I don't remember'"); *see also Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) (stating that party opposing summary judgment "must bring forward 'some affirmative indication that his version of relevant events is not fanciful'" (quoting *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980))). Plaintiff has failed to put forth any evidence to support an inference of disability discrimination, nor has the Court's independent review of the record (including plaintiff's deposition transcript) uncovered any evidence that creates a genuine dispute of material fact on the issue of discriminatory intent. In fact, to the contrary, the undisputed record shows that defendant attempted to accommodate plaintiff's hearing pain by allowing her time off and making adjustments to her schedule.[9] *See, e.g., Freadman v.*

---

[8] (See Pl. Dep. 203:8-12 ("Q: So you got a customer's answering machine[,] and you sent that to the survey? A: I did. I did. It was so stupid."); *id.* 207:10-17 ("Q: It is true that Ms. Rayola's heard you transferring a customer's answering machine to the survey[,] correct Ms. Petrunti? A: I believe so. Q: She did not make that up[,] correct? A: No. It's true.").)

[9] The Court notes that awareness of her alleged impairment and her requests for leave are, without more, insufficient to raise an inference of discrimination that overcomes, for purposes of

13

*Metro. Prop. & Casualty Ins. Co.*, 484 F.3d 91, 100-01 (1st Cir. 2007) (finding that plaintiff could not establish prextext, in part because defendant had accommodated her requests regarding her ulcerative colitis). In short, considering the evidence as a whole, and viewing all the evidence in the light most favorable to plaintiff, plaintiff has not put forward any evidence from which a reasonable jury could conclude that Cablevision's reason for firing her was pretextual. Therefore, even if plaintiff could establish a prima facie case under the ADA, her claim would not survive summary judgment.

IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56(c), is granted. The Clerk of the Court is directed to enter judgment accordingly and close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 30, 2009
Central Islip, New York

\* \* \*

Plaintiff is *pro se*. Attorneys for defendant are Barbara E. Hoey and Craig A. Tamamoto, Kelley Drye & Warren, LLP, 101 Park Avenue, New York, NY 10178.

---

summary judgment, the undisputed evidence to support the non-discriminatory reason for termination. *See, e.g.*, *Browne v. CNN Am., Inc.*, No. 98 CIV. 1768 (JSM), 1999 WL 1084236, at \*4 (S.D.N.Y. Dec. 1, 1999) (stating that comments referencing symptoms, which showed an awareness of alleged disorder and differences in age, "do not necessarily signify that [the supervisor] was prejudiced against [plaintiff] because of his age or disability . . . ."). Similarly, no inference of discrimination can be drawn from the timing of the termination because defendant had been aware of the ear impairment, and had made several accommodations, for over one year prior to the termination. *See generally Fall*, 289 F. App'x at 421-22 (stating that timing of discharge did not give rise to inference of improper motivation regarding plaintiff's hearing loss because, among other things, employer "was aware of and accommodated [plaintiff's] claimed hearing impairment from the onset of her employment, a fact that militates against a later finding of discrimination").